UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GREGORY WILLIS,

        Plaintiff,

v.

COUNTY OF SAGINAW, and
TIMOTHY M. NOVAK,

        Defendants.

Case No. 1:21-cv-10217
Hon. Thomas L. Ludington
Magistrate Patricia T. Morris

_____/

**ORDER STAYING PROCEEDINGS PENDING THE DISPOSITION OF THE
SOVEREIGN IMMUNITY APPEAL IN FOX V. SAGINAW**

On January 29, 2021, Plaintiff Gregory Willis filed the instant action against Defendants

Saginaw County and its treasurer Timothy Novak, in his individual and official capacities. ECF

No. 1. Plaintiff alleges that Defendants violated his rights under Michigan and federal law by

foreclosing on his tax delinquent properties without compensating him for the after-tax equity.

Plaintiff is a member of the certified class in the case *Fox v. County of Saginaw, et al.*, No. 1:19-

cv-11887 (E.D. Mich. 2021), a case which involves identical claims and which is currently stayed

pending an appeal before the United States Court of Appeals for the Sixth Circuit. *See Fox v.

Saginaw County, MI, et al.*, No. 21-1108 (6th Cir. 2021). The parties were directed to show cause

why this case should not also be stayed, ECF No. 9, and subsequently filed timely responses, ECF

Nos. 10, 11. For the reasons set forth below, this case will be stayed pending the disposition of the

appeal in *Fox*.

# I.

## A.

Plaintiff Gregory Willis was the owner of three properties located in Saginaw County, Michigan.[1] ECF No. 1 at PageID.3. Unpaid taxes began to accumulate on the properties in 2016. *Id.* In March 2019, Defendant Saginaw County, through its treasurer, Timothy M. Novak, foreclosed on the properties to "recover a total property tax debt of $5,655.38." *Id.* By the "winter of 2019," the three properties had a combined market value of approximately $36,000. *Id.* at PageID.3.

On April 5, 2019, Plaintiff visited Defendant Novak's office with the intention of paying the property tax balance, but Defendant Novak refused to accept payment. *Id.* at PageID.4. Defendant Novak instead told Plaintiff that he could purchase the properties at the foreclosure auction. *Id.* Plaintiff thereafter retained counsel to negotiate the return of the foreclosed properties. *Id.* After Plaintiff's counsel wrote to Defendant Novak, counsel for Saginaw County informed Plaintiff's counsel that "two of the houses would go to auction and one of the houses would go to the Saginaw County Land Bank." *Id.* at PageID.4–5.

Nonetheless, Defendant Novak apparently agreed to meet Plaintiff at a restaurant on August 16, 2019 to discuss "how much money Plaintiff needed to get the three houses back." *Id.* at PageID.5. Once there, however, Defendant Novak informed Plaintiff that "the house slated for the Saginaw County Land Bank was going to the tenant that lived in the house and that the other two houses w[ould] be sold at [] auction." *Id.*

---

[1] The following facts are taken from Plaintiff's Complaint and are assumed true for purposes of this Order.

Plaintiff does not explain whether the two properties set for auction have been sold but alleges that "[s]ince the foreclosure, Defendants have failed to compensate [him] for the excess after-tax equity of his properties." *Id.* at PageID.5.

## B.

Plaintiff is one of potentially thousands of Michigan property owners who have seen their tax delinquent properties foreclosed without any return of the after-tax equity. The usual culprit, as in this case, is a Michigan county exercising its authority under a former version of Michigan's General Property Tax Act (the "GPTA"), Mich. Comp. Laws § 211.1 *et seq.* Before recent amendments,[2] the GPTA allowed the statutorily defined "foreclosing governmental unit" to retain the surplus proceeds of a tax foreclosure sale without any procedure for compensating the owner. *See* M.C.L. § 211.78(m) (2015) (amended 2021). The retention of surplus proceeds under the GPTA, and the remedies for that retention, is the subject of a class action before this Court entitled *Fox v. County of Saginaw, et al.*, No. 1:19-cv-11887 (E.D. Mich. 2021).

On June 25, 2019, Thomas A. Fox filed a complaint on behalf of himself and all others similarly situated against a group of Michigan counties and county treasurers. ECF No. 1 in No. 19-11887. Mr. Fox alleged that by retaining surplus proceeds from tax foreclosure sales, the defendants had, *inter alia*, taken property without just compensation in violation of Michigan and federal law. *Id.* Defendants Saginaw County and Timothy M. Novak are among the named defendants in *Fox*.

---

[2] The amendments, which became effective on December 22, 2020, allow a former property owner to file a claim for "any applicable remaining proceeds from the transfer or sale of foreclosed property," subject to certain statutory conditions. *See* M.C.L. § 211.78t. Former owners whose property was transferred or sold "before July 18, 2020" may only file a claim if the Michigan Supreme Court orders that its decision in *Rafaeli, LLC v. Oakland Cty.*, 952 N.W.2d 434 (Mich. 2020), applies retroactively. *Id.* § 211.78t(1)(b). In *Rafaeli*, the Michigan Supreme Court held that the retention of surplus proceeds under the GPTA constituted a taking without just compensation in violation of Michigan's Taking Clause. *Rafaeli*, 952 N.W.2d at 463.

On October 16, 2020, following controlling decisions in *Rafaeli, LLC v. Oakland Cty.*, 952

N.W.2d 434 (Mich. 2020), and *Freed v. Thomas*, 976 F.3d 729 (6th Cir. 2020),[3] this Court certified

the following class in *Fox*:

> All persons and entities that owned real property in the following counties, whose
> real property, during the relevant time period, was seized through a real property
> tax foreclosure, which was worth and/or which was sold at tax auction for more
> than the total tax delinquency and were not refunded the value of the property in
> excess of the delinquent taxes owed: Alcona, Alpena, Arenac, Bay, Clare,
> Crawford, Genesee, Gladwin, Gratiot, Huron, Isabella, Jackson, Lapeer, Lenawee,
> Macomb, Midland, Montmorency, Ogemaw, Oscoda, Otsego, Presque Isle,
> Roscommon, Saginaw, Sanilac, St Clair, Tuscola, and Washtenaw.

ECF No. 124 at PageID.2291 in No. 19-11887. Mr. Fox was appointed class representative and

his attorneys, E. Powell Miller of The Miller Law Firm PC and Phillip L. Ellison of Outside Legal

Counsel PLC, were appointed class counsel. *Id.* at PageID.2305.

On January 13, 2021, this Court decided several motions to dismiss filed by the *Fox*

defendants. ECF No. 148 at No. 19-11887. Among the various defenses raised there was the

assertion that the county defendants were immune from suit because the GPTA specified how the

"foreclosing governmental unit" was to handle the proceeds of a tax foreclosure sale. *Id.* at

PageID.3316. Accordingly, the county defendants argued that in retaining surplus proceeds under

the GPTA, they were acting as an "arm of the State." *Id.*

This Court rejected the county defendants' argument because regardless of how proceeds

were handled under the GPTA, the county defendants voluntarily elected to serve as the

foreclosing governmental unit. *Id.* at PageID.3317. Nonetheless, the individual county treasurers

were dismissed on the basis of qualified immunity, and several federal and state law claims against

the county defendants were dismissed for failure to state a claim. *Id.* at PageID. 3334–35. The

---

[3] In *Freed*, *supra*, the Sixth Circuit held that neither the Tax Injunction Act nor principles of comity
precluded an action against Michigan counties for the recovery of surplus proceeds retained under the
GPTA. *Freed*, 976 F.3d at 736–38.

remaining claims, which alleged a taking without just compensation, inverse condemnation, violation of due process, and unjust enrichment, were allowed to proceed against the county defendants.

On February 1, 2021, the county defendants filed a timely notice of appeal from this Court's denial of sovereign immunity. ECF No. 153 in No. 19-11887. That appeal remains pending before the United States Court of Appeals for the Sixth Circuit. *See Fox v. Saginaw County, MI, et al.*, No. 21-1108 (6th Cir. 2021).

Shortly after the county defendants' notice of appeal was filed, the *Fox* class moved to continue the proceedings during the pendency of the appeal. ECF No. 155 in No. 19-11887. The county defendants responded with a motion to stay the proceedings. ECF No. 163 in No. 19-11887. Both motions were fully briefed by the parties. *See* ECF Nos. 164, 165 in No. 19-11887. Given the "serious questions" surrounding the sovereign immunity defense, the county defendants' motion to stay was granted on March 9, 2021. ECF No. 166. at PageID.3998 in No. 19-11887. The case remains stayed pending the disposition of the county defendants' appeal.

## C.

On January 29, 2021—more than three months after the *Fox* class was certified—Plaintiff filed the instant action against Saginaw County and its treasurer Timothy Novak, in his individual and official capacities. ECF No. 1. Like the plaintiff in *Fox*, Plaintiff alleges a taking without just compensation in violation of the Michigan and federal constitutions and *Monell* liability on behalf of Defendant Saginaw County. *Id.* at PageID.5–8.

On March 17, 2021, Defendants filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 5. Defendants argue that the Complaint should be dismissed for several reasons, including (1) that Plaintiff has not opted out of the certified class

in *Fox* and (2) that Defendants cannot be held liable for their actions under the GPTA because "the denial of refunds was not a 'custom, usage, policy or practice' of [] Defendants," but of the Michigan legislature. *See* ECF No. 5 at PageID.32–33, 36–39.  Defendants' Motion has been fully briefed by the parties and remains pending. *See* ECF Nos. 7, 8.

Given the close relationship between this case and *Fox*, the parties were directed to show cause why this case should not be stayed pending the disposition of the *Fox*. ECF No. 9. The parties have since filed timely responses. ECF No. 10, 11.

## II.

In deciding whether to stay proceedings during the pendency of an appeal, courts "consider the same four factors that are traditionally considered in evaluating the granting of a preliminary injunction." *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). These factors are: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Id.* "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.*

In his response to the Show Cause Order, Plaintiff applies the six-factor test outlined in *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014). This Court cited *F.T.C.* in the Show Cause Order for the general proposition that courts retain the inherent power to stay proceedings. *See* ECF No. 9 at PageID.132 (quoting *F.T.C.*, 767 F.3d at 626). This Court did not intend for the parties to consider the six-factor test in *F.T.C.* because that test specifically concerns the propriety of staying civil proceedings while a criminal investigation is ongoing. *See F.T.C.*, 767 F.3d at 627–28 (directing courts to consider "the extent to which the issues in the criminal

case overlap with those presented in the civil case"). Given that this case is largely duplicative of *Fox*—both with respect to the parties and the issues—the proper test here is the four-factor test outlined in *Griepentrog* and previously applied by this Court in *Fox*. *See* ECF No. 166 in No. 19-11887 at PageID.3993.

### III.

As they or their representatives did in *Fox*, the parties in this case dispute the propriety of staying this case while certain issues remain pending on appeal. Plaintiff argues that this case should proceed notwithstanding the stay in *Fox* because, *inter alia*, this Court's order denying sovereign immunity is entitled to a "presumption of correctness." ECF No. 11 at PageID.174. Defendants, however, contend that this case should be stayed because doing otherwise would duplicate the resources expended in *Fox*. ECF No. 10 at PageID.141–42. They also argue that this case should be stayed pending the disposition of the cross-appeals in *Freed v. Thomas*, No. 17-13519 (E.D. Mich. 2021).[4]

For the reasons set forth below, this case will be stayed pending the disposition of the sovereign immunity appeal in *Fox*. Because the case will be stayed for the pendency of the *Fox* appeal, this Court declines to consider whether the case should also be stayed pending the disposition of the cross-appeals in *Freed*.

---

[4] *Freed*, *supra*, is a substantially similar case brought by a former Michigan property owner against Gratiot County and its treasurer. On February 26, 2021, Judge Bernard Friedman granted summary judgment for the plaintiff on his Fifth Amendment takings claim. *Freed v. Thomas*, No. 17-CV-13519, 2021 WL 942077, at *8 (E.D. Mich. Feb. 26, 2021). But consistent with *Rafaeli*, *supra*, Judge Friedman held that the proper measure of damages was the difference between the amount of taxes owed and the amount for which the property was sold at auction (*i.e.*, the "surplus proceeds"), not the difference between the taxes owed and the fair market value of the property. *Id.* at *3–4. The parties timely filed cross-appeals that remain pending.

**A.**

The first factor in considering whether to stay proceedings pending an appeal is the appellant's likelihood of success on the merits. *Griepentrog*, 945 F.2d at 153. "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury . . . ." *Id.* Because Defendants would suffer the irreparable loss of immunity absent a stay—as discussed in Section III.B., *infra*—they need only show the presence of "serious questions going to the merits." *Griepentrog*, 945 F.2d at 153.

Here, "serious questions" surround the issue of sovereign immunity. The Sixth Circuit has never decided whether a county can be held liable for injuries arising from its participation in a state law scheme that expressly contemplates the injuries caused. While this Court held that existing Sixth Circuit precedent would not foreclose suit against the county defendants in *Fox* because they were not compelled to act as foreclosing governmental unit, there remains at least a good faith argument that the "arm of the state" doctrine should apply.

Plaintiff does address the *Fox* appellants' probability of success on appeal beyond his assertion that this Court's ruling is entitled to a "presumption of correctness" and that an affirmance is "highly probable." ECF No. 11 at PageID.174–75. While this Court certainly views its own rulings as correct, it is unclear what "presumption" Plaintiff refers to or how it should alter the analysis here. "A district court's decision on the application of Eleventh Amendment immunity is a question of law that [is] [] review[ed] de novo." *Studstill El v. Michigan Dep't of State*, 691 F. App'x 820, 822 (6th Cir. 2017) (citing *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005)). Even if the *Fox* appellants are unlikely to prevail—as it would seem to this Court—*Fox* is not a case where the appellants have "simply no likelihood of success. *See Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) ("Although no one factor is controlling, a finding

- 8 -

that there is simply no likelihood of success on the merits is usually fatal."). Accordingly, the first factor weighs heavily in favor of a stay.

**B.**

The second factor is the irreparability of the harm that would be suffered absent a stay. *Griepentrog*, 945 F.2d at 153. The irreparable harm at issue here is the functional loss of immunity.

The Eleventh Amendment confers more than just protection from liability. "[T]he very object and purpose of the 11th Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (quoting *In re Ayers*, 123 U.S. 443, 505 (1887)). Accordingly, "[t]he entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 144 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis original); *see also Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (holding that "the Eleventh Amendment is a true jurisdictional bar" that can be raised "sua sponte at any stage in litigation" and "must be decided before the merits").

In the similar context of qualified immunity, courts routinely stay proceedings for the pendency of appeal to preserve immunity. *See, e.g.*, *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) ("While the issue [of qualified immunity] is before the trial court or the case is on appeal, the trial court should stay discovery."); *Bays v. Montmorency, Cty. of*, No. 15-10534, 2017 WL 510696, at *1 (E.D. Mich. Feb. 8, 2017) ("[T]rial courts are obliged to stay proceedings when Defendants properly appeal the trial court's denial of qualified immunity."); *Rondigo LLC v. Twp. of Richmond, Michigan*, No. CV 08-10432, 2009 WL 10681186, at *3 (E.D. Mich. Dec. 9, 2009)

- 9 -

(granting defendants' motion for stay and noting that "[qualified immunity] is an immunity from suit and not a mere defense to liability").

Plaintiff does not directly address whether Defendants would suffer an irreparable harm absent a stay. Given Defendants' potential loss of immunity, the second factor weighs heavily in favor of a stay.

### C.

The third factor is the likelihood that others will be harmed if a stay is granted. *Griepentrog*, 945 F.2d at 153. Plaintiff has not identified any persons besides himself who might be prejudiced by a stay, and this Court is unaware of any such persons. Accordingly, the third factor is inapplicable.

### D.

The fourth factor is the public interest in granting the stay. *Griepentrog*, 945 F.2d at 153. While Plaintiff and other members of the public certainly have an interest in the expeditious resolution of this case, the public has at least a comparable interest in avoiding duplicative litigation and other needless expenditures. The Sixth Circuit in *Fox* is already set to decide whether the Eleventh Amendment shields Michigan counties from actions for after-tax equity withheld under the GPTA. Allowing this case to proceed and presumably address the same issue would be patently duplicative. Furthermore, given the likelihood that any ruling on sovereign immunity in this case would be appealed, denying a stay would be unlikely to result in a more expeditious resolution. Therefore, the public interest weighs in favor of a stay.

Having considered the four factors above, this case will be stayed pending the disposition of the sovereign immunity appeal in *Fox v. Saginaw County, MI, et al.*, No. 21-1108 (6th Cir. 2021).

**IV.**

Accordingly, it is **ORDERED** that this case is **STAYED** pending the disposition of the appeal in *Fox v. Saginaw County, MI, et al.*, No. 21-1108 (6th Cir. 2021).


Dated: May 26, 2021                                       s/Thomas L. Ludington
                                                          THOMAS L. LUDINGTON
                                                          United States District Judge

- 11 -